IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Mike Anthony Richardson, | ) | Civil Action No.: 4:08-cv-03539-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| City of Marion; City of Marion Police | ) | |
| Department; Captain Jim Gray; | ) | |
| Chief Willie Smith; Marion D. Mullins; | ) | |
| Annette Garner as parent and Dean Brown | ) | |
| as guardian of Marion D. Mullins; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff brought this suit alleging 42 U.S.C. § 1983 and state law claims. This matter is before the court with the [Docket Entry 18] Motion for Summary Judgment filed on March 31, 2010, by Defendants City of Marion, City of Marion Police Department, Captain Jim Gray, and Chief Willie Smith (collectively "Defendants"). Plaintiff timely filed his [Docket Entry 25] Response in Opposition on May 3, 2010. The court held a hearing on the matter on October 21, 2010. For the reasons set out below, the court grants summary judgment as to the federal § 1983 claim and remands the remaining state law claims to the state court in which they were originally filed.

**Factual Background and Procedural History**

At the time of the incident at issue, Plaintiff was a teacher at Johnakin Middle School in Marion, South Carolina. Plf's. Aff. [Docket Entry 25-1] at 2. Defendant Mullins was a student at Johnakin Middle School. *Id.* at 3.

According to Plaintiff's deposition testimony, on August 24, 2007, Plaintiff and several other teachers noticed a group of students who were wearing their pants too low, in violation of the school

dress code. Plf's. Depo. [Docket Entry 18-1] at 4. Plaintiff directed the group of students, which included Defendant Mullins, to pull up their pants. *Id.* at 5. All of the students immediately complied, except for Defendant Mullins. *Id.* Defendant Mullins began to curse at Plaintiff and called him vulgar names. *Id.* When Defendant Mullins refused to go with Plaintiff to the principal's office, Plaintiff "grabbed [him] by the – the wrist and began to take him to the office." *Id.* Plaintiff eventually passed Defendant Mullins off to the school's resource officer and sat back down with the other teachers. *Id.* About fifteen minutes later, Defendant Mullins walked up to Plaintiff, pulled his pants down so that Plaintiff could see, and cursed at Plaintiff. *Id.* After Defendant Mullins once again refused to go with Plaintiff, Plaintiff "grabbed him again by the arm, and . . . began to take him to . . . the assistant principal." *Id.* at 6. Plaintiff gave custody of Defendant Mullins to Mr. Gilchrist, the assistant principal, and explained the situation to Mr. Gilchrist. *Id.* Plaintiff began to walk away, but Defendant Mullins was still "being belligerent" and refusing to go into the building with Mr. Gilchrist. *Id.* Plaintiff then noticed that Defendant Mullins had his fist balled up, and Plaintiff alleges he was worried Defendant Mullins was going to attempt to strike Mr. Gilchrist. *Id.* Plaintiff "came up behind [Defendant Mullins] and he grabbed that – that fist, and – and [he] – and [he] grabbed [Defendant Mullins] by the back of the neck and tried to get him to go in the building . . . ." *Id.* at 6-7. When Mr. Gilchrist stated to Plaintiff, "I got him," Plaintiff "backed off" and released his hold on Defendant Mullins. *Id.* at 7. After Plaintiff had returned to his classroom, Mr. Gilchrist and the principal informed Plaintiff that he had been placed on administrative leave. *Id.*

Later that day, Police Officer Tony Flowers completed an incident report after meeting with Defendant Mullins. The narrative section of the [Docket Entry 18-8] Incident Report stated the following:

> On the above date [August 24, 2007] and time this officer (Flowers) met with the Complainant (Ms Ivern Brown) and the Victim (Mr. Marion D. Mullins) . . . in reference to Mr. Mullins being assaulted at Johnakin Middle School. Mr. Mullins stated that he was walking to the cafeteria when he was stopped by the school resource officer and told to turn his shirt inside out because it had a picture of a gun on it. He said that he went to the cafeteria to eat and then went outside. He stated that while he was outside the suspect (Mr. Richardson) called for him to come over to him. Mr. Mullins said he asked Mr. Richardson what did he do, but Mr. Richardson didn't answer him. He said that Mr. Richardson then picked him up off his feet, still holding him by the throat, and continued to choke him. Mr. Mullins said that after a few moments several teachers showed up and told Mr. Richardson to let him go, which he did. I then went to the school and spoke with the school resource officer (Sgt. Barr). She stated that she did not witness the incident and was not sure of the details pertaining to it. She stated that she believed Mr. Gilchrist (teacher) witnessed the incident and called him to her office. Mr. Gilchrist stated that he, along with some other faculty, gave written statements to the superintendent. I advised Sgt. Poston and Capt. Grey [sic] of the incident. Capt. Grey [sic] made contact with the school district office and will get the written statements. Mr. Mullins also stated that while Mr. Richardson was choking him, cursed at him, calling him a "bitch, punk, whore, and fucking asshole.["] Ms. Ivern Brown was issued a victim's form on behalf of Mr. Mullins. EMS met with Ms. Brown and Mr. Mullins . . . but he refused treatment.

*Id.* The Incident Report listed "Assault and Battery" as the incident type. *Id.*

After the Incident Report was filed, Defendant Officer Gray took several voluntary statements regarding the events in question. On August 27, 2007, Plaintiff completed his [Docket Entry 25-5] Voluntary Statement at the Marion Sheriff Office. In his Voluntary Statement, Plaintiff stated the following:

> On Aug. 24 2007 while at recess I approached a group of students concerning their pants being below their waist. All of the student[s] complied with my instruction but one. I asked him again to pull up his pants and he said "fuck you." I asked him to come with me and he said again "fuck you." I took his and put the other hand on his muscle area (pressure point) and escorted him towards the office. [He] resisted the hold [sic] time. I then saw officer Barr and passed him off to her and then took my seat and began to talk again with teachers Huffman and Smith. The student came by my table again and pulled down his pants and said "fuck you." I got up approached the student, who continued to curse me. I grabbed him again with a pressure point maneuver and took him to Mr. Gilchrist the Asst. Principal. Mr. Gilchrist said I got

3

him and I let go of him and Mr. Gilchrist ordered him to go inside. . . . Mr. Gilchrist, myself and student was 2 to 3 ft apart and Mr. Gilchrist didn't have physical control of the student who was still cursing me and being disrespectful with word[s] such as "you pussy" and "fuck you bitch." The student turn from about 2 to 3 feet away with fist balled up and said "you pussy" I made steps towards the student and said everything you call me goes towards your parents. At that time I am close with the student because he has turn towards me and I am close to him. I see his fist balled up so I reapplied the pressure point hold to protect myself in case the student tries to hit me. Mr. Gilchrist says to me again Mr. Richardson I got him I continued to hold him because he was still cursing with his fist balled up. I stated to the student to "hit me," because his fist was balled up. I grabbed him to ensure he could not hit me. At no time did I strike the child, put undue pressure on his arm or neck and at know [sic] time was we more than 2 to 3 feet apart. I was only trying to protect myself from and [sic] aggressive child who could not comply to school regulations.

*Id.* Defendant Gray signed Plaintiff's Voluntary Statement as a witness thereto. *Id.*

Two days later, on August 29, 2007, Lorrie Ann Huffman, a teacher at Johnakin Middle School, gave her [Docket Entry 25-6] Voluntary Statement to the City of Marion Police Department. Huffman stated the following:

While sitting at the picnic table outside at lunch with Mr. Richardson and Mrs. Smith, Deandre Mullins came walking by with his pants sagging and I said to him in a low tone "pull those pants up," but he just ignored me and kept walking. Mrs. Smith said "that's Deandre he's already been in the office this morning about those pants.["] Mr. Richardson said "he's going to take him back,["] so he ran over and took Deandre by the upper arm out of the mist of his friends and was talking to him at this point Deandre was laughing. Mr. Richardson pick Deandre up off the ground from behind as he was bringing him to Mr. Gilchrist and set him in front of Mr. Gilchrist. Mr. Richardson begin to tell Mr. Gilchrist what was happening with Deandre. Deandre at this time was upset "angry" and he blow up against Mr. Richardson. Mr. Gilchrist took Deandre in front of him and begin to walk towards the cafeteria they walked about 3 or 4 steps away and Mr. Richardson was walking along still fussing as they were walking Mr. Richardson reach over and held Deandre by the back of . . . his neck and Mr. Gilchrist push his hand away.

*Id.* Defendant Gray signed Huffman's Voluntary Statement as a witness thereto. *Id.*

Also on August 29, 2007, Russell Raniszewski gave his [Docket Entry 25-6] Voluntary Statement to the City of Marion Police Department. Raniszewski was a teacher at Johnakin Middle

4

School. In his Voluntary Statement, Raniszewski stated the following:

> I was standing w/ the art teacher under the end of the [illegible], when I noticed Mr. Richardson aggressively trot towards the student. Mr. Richardson forcefully grabbed student under right arm and started bringing student over by myself and the art teacher. By this time, Mr. Gilchrist had come by us, Mr. Richardson forcefully turned student around to show Mr. Gilchrist student's attire. This time the student pulled his arm away from Mr. Richardson. Student did not attempt to run away, as student pulled arm, Mr. Richardson grabbed student with both hands under left arm and picked student over his head. At this time student body started gathering around. Mr. Richardson put student down. Mr. Gilchrist stepped in between student & Mr. Richardson. Mr. Gilchrist started to accompany student away. About 5 yards after initial occurrence, Mr. Richardson w/ no provoke from my viewpoint by the student, Mr. Richardson forcefully grabbed student by the back of the neck. At all these occurrences, the student never said anything but "get your hands off me." Mr. Richardson said several times "what are you going to do. Nothing." Once Mr. Richardson grabbed student by back of neck Mr. Gilchrist stepped in to separate Mr. Richardson & student. Only thing that I saw that student did was after Mr. Richardson put student down after picking him up was "chest up" to Mr. Richardson. As soon as Mr. Richardson grabbed student by neck, myself & art teacher turned around to get student body turned around and back out to bus circle, by this time Mr. Gilchrist escorted student to office. I didn't see where Mr. Richardson went to after all the incidents occurred.

*Id.* Defendant Gray signed Raniszewski's Voluntary Statement as a witness thereto. *Id.*

Prior to seeking an arrest warrant, Defendant Gray reviewed witness statements and the Incident Report. Gray's Depo. [Docket Entry 18-7] at 3-4. Defendant Gray also testified that he spoke with Mr. Gilchrist prior to seeking a warrant, and that Mr. Gilchrist told him that Plaintiff grabbed Defendant Mullins by the neck. *Id.* at 4-5. Based on those statements and the Incident Report, Defendant Gray determined that there was probable cause to charge Plaintiff with simple assault and battery. *Id.* at 2-3.

On August 30, 2007, Defendant Gray sought an arrest warrant from City Judge Seals. Defendant Gray signed the warrant affidavit as the affiant, which stated the following: "On the 24th day of August 2007, at Johnakin Middle School, . . . Mike Richardson did assault a male juvenile

5

by grabbing him by the arm and neck. This incident taking place within the city limits of Marion and constituting the crime of simple assault and battery." Warrant [Docket Entry 18-2]. City Judge Seals determined that probable cause existed, and issued an arrest warrant charging Plaintiff with simple assault and battery. *Id.*

Plaintiff avers that he had a conversation with Defendant Gray the day before he was arrested. Plaintiff further avers that Defendant Gray informed him that Defendant Gray "was going to have to charge [him]." Plf's. Aff. at 4. In addition, Plaintiff stated that he and Defendant Gray had "run-ins" in the past, and that Defendant Gray "never acted like he had any respect [for] or liked" Plaintiff. *Id.* at 5. On September 5, 2007, Plaintiff was arrested for simple assault and battery. *Id.* at 4.

On July 17, 2008, a jury trial was held in Marion City Court regarding Plaintiff's charge of simple assault and battery. *Id.* at 5. The jury ultimately found that Plaintiff was not guilty of the simple assault and battery charge. Disposition Sheet [Docket Entry 25-7] at 1-2.

On September 2, 2008, Plaintiff initiated this suit by filing his [Docket Entry 1-1] Complaint in the Court of Common Pleas for Marion County, South Carolina. Plaintiff's Complaint alleges four causes of action: (1) 42 U.S.C. § 1983 against all defendants, (2) Malicious Prosecution against all defendants, (3) Abuse of Process against Defendants Mullins, Garner, and Brown, and (4) Slander against Defendants Mullins, Garner, and Brown. *Id.* On October 17, 2008, Defendants removed the case to federal court based on the § 1983 claim. Notice of Removal [Docket Entry 1]. Defendants City of Marion, City of Marion Police Department, Gray, and Smith filed their [Docket Entry 4] Answer on October 20, 2008.

Defendants Mullins, Garner, and Brown failed to file an answer. On April 17, 2009, Plaintiff filed a "motion for default" against those defendants. [Docket Entry 6]. On January 7, 2010, the

6

Clerk of Court entered an entry of default as to those three defendants. Entry of Default [Docket Entry 16].

Defendants City of Marion, City of Marion Police Department, Gray, and Smith filed their summary judgment motion on March 31, 2010. After the court granted multiple extensions of time, Plaintiff filed his response in opposition on May 3, 2010. The court held a hearing on the matter on October 21, 2010.

## **Summary Judgment Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant has the burden of proving that summary judgment is appropriate. Once the movant makes the showing, however, the opposing party must respond to the motion with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"[O]nce the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The

7

nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See id.* Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp.,* 477 U.S. at 322.

### Discussion

I. <u>Defendants City of Marion Police Department and Chief Willie Smith</u>

Defendants City of Marion Police Department and Chief Willie Smith should both be dismissed as parties to this action. The Complaint indicates that the § 1983 claim and the malicious prosecution claim were brought against "ALL DEFENDANTS," including the Police Department and Smith. However, at the hearing, Plaintiff's counsel conceded that the § 1983 claim was against only Defendant Gray. In doing so, Plaintiff's counsel also admitted that Plaintiff did not have a § 1983 claim against those defendants in default. Moreover, Plaintiff's counsel indicated that the malicious prosecution claim was against only the City of Marion. Plaintiff's counsel made this second concession after Defendants' counsel stated that the Police Department was not a proper defendant, and that the Police Department was actually an agency of Defendant City of Marion. Accordingly, based on these concessions by both counsel, there are no causes of action against either Smith or the Police Department. Therefore, Chief Willie Smith and City of Marion Police Department are both dismissed from this action by consent of the parties.

II. <u>Federal § 1983 Claim against Defendant Gray[1]</u>

Plaintiff was arrested on the charge of simple assault and battery. Simple assault and battery

---

[1] Although the Complaint indicates that the § 1983 claim was against "ALL DEFENDANTS," the court once again notes that Plaintiff's counsel conceded at the hearing that the § 1983 was against only Defendant Gray.

8

has been defined as "an unlawful act of violent injury to another, unaccompanied by any circumstances of aggravation." *State v. Tyndall*, 518 S.E.2d 278, 285 (S.C. Ct. App. 1999). Additionally, the South Carolina Court of Appeals has stated that,

> in regard to *violent injury*, "[t]he adjective 'violent' may be somewhat misleading." William Shepard McAninch & W. Gaston Fairey, *The Criminal Law of South Carolina* 188 (3d ed. 1996). For example, assault and battery has also been defined as "any touching of the person of an individual in a rude or angry manner, without justification." *State v. Mims*, 335 S.E.2d 237, 237 (S.C. 1985); *see also State v. Germany*, 44 S.E.2d 840, 841 (S.C. 1947) ("Violence [as included in the definition of assault and battery] does not necessarily import serious injury."); *cf. State v. DeBerry*, 157 S.E.2d 637, 640 (S.C. 1967) (serious bodily injury is not necessary to establish assault and battery of a high and aggravated nature).

*State v. LaCoste*, 553 S.E.2d 464, 471 (S.C. Ct. App. 2001).

Essentially, Plaintiff asserts what amounts to a § 1983 malicious prosecution claim[2] against Defendant Gray. Plaintiff contends that Defendant Gray arrested Plaintiff without probable cause to do so, and that Defendant Gray maliciously pursued the simple assault and battery charges against Plaintiff knowing that the allegations were false. Defendant Gray, in response, contends that he is entitled to qualified immunity as to the § 1983 claim. The court agrees.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Because the Fourth Amendment right to be arrested only on probable cause

---

[2] The Fourth Circuit has held that a "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000). "In order for a plaintiff to state a section 1983 malicious prosecution claim for a seizure violative of the Fourth Amendment, [it is] required that the *defendant* have 'seized [plaintiff] pursuant to legal process that was not supported by probable cause and that the criminal proceedings [have] terminated in [plaintiff's] favor.'" *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005) (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183-84 (4th Cir. 1996)).

9

is clearly established, the question that remains is whether a reasonable person in [Defendant Gray's] position would have thought [his] actions violated that right." *Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1996). An officer should be shielded from personal liability when the "officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 129 S. Ct. 808, 823 (2009); *see also Park v. Shiflett*, 250 F.3d 843, 853 (4th Cir. 2001) ("A police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful.") (internal quotations and citations omitted).

"In assessing the objective reasonableness of [Defendant Gray's] actions, the absence of probable cause is not determinative. Rather, where a law enforcement officer acts pursuant to a warrant, the critical question is whether the officer *could have reasonably thought* there was probable cause to seek the warrant." *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000). "Qualified immunity is lost only if 'the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" *Reddy*, 101 F.3d at 356 (quoting *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)). The Supreme Court has explained why the absence of probable cause is not determinative as follows:

> [I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials–like other officials who act in ways they reasonably believe to be lawful–should not be held personally liable.

*Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *see also Wadkins*, 214 F.3d at 539 (quoting *Anderson*, 483 U.S. at 641). Therefore, if this court determines that Defendant Gray could have reasonably believed there was probable cause to seek the warrant," he should be entitled to qualified immunity on the § 1983 claim. *Wadkins*, 214 F.3d at 539 (emphasis omitted).

In analyzing the reasonableness of Defendant Gray's actions, it is important to first look to the principles relating to probable cause. "Probable cause to justify an arrest arises when 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). While "[p]robable cause requires more than 'bare suspicion[,]' [it] requires less than evidence necessary to convict." *Porterfield*, 156 F.3d at 569 (quoting *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)). In assessing whether probable cause exists, the court must examine the totality of the circumstances. *See Gomez v. Atkins*, 296 F.3d 253, 262 (4th Cir. 2002). Finally, "[d]etermining whether the information surrounding an arrest suffices to establish probable cause is an individualized and fact-specific inquiry." *Wadkins*, 214 F.3d at 539 (citing *Wong Sun v. United States*, 371 U.S. 471, 479 (1963)). Accordingly, the court now turns its attention to those circumstances surrounding Defendant Gray's actions in obtaining the arrest warrant in this case.

Prior to seeking the simple assault and battery arrest warrant, Defendant Gray had compiled, at least, the following information: (1) the Incident Report, (2) Plaintiff's Voluntary Statement, (3) Huffman's Voluntary Statement, (4) Raniszewski's Voluntary Statement, and (5) an interview of Mr. Gilchrist. The Incident Report indicated that Defendant Mullins alleged that Plaintiff grabbed "him by the throat," picked him up, and "choke[d] him." Huffman's and Raniszewski's Voluntary Statements appeared to corroborate, to some extent, the conduct alleged in the Incident Report. Huffman stated that Plaintiff "pick[ed] [Defendant Mullins] up off the ground from behind . . . and set him in front of Mr. Gilchrist." Huffman's Voluntary Statement. Further, Huffman stated that

11

Plaintiff later "reach[ed] over and held [Defendant Mullins] by the back of . . . his neck and Mr. Gilchrist push his hand away." *Id.* Similarly, Raniszewski averred that Plaintiff "forcefully grabbed [Defendant Mullins] under right arm . . . [and] forcefully turned [Defendant Mullins] around to show Mr. Gilchrist [Defendant Mullins'] attire." Raniszewski's Voluntary Statement. Additionally, Raniszewski stated that he saw Plaintiff "grab[] [Defendant Mullins] with both hands under left arm and pick[] [Defendant Mullins] over his head." *Id.* Finally, Raniszewski stated that, "w/ no provoke from my viewpoint by [Defendant Mullins], [Plaintiff] forcefully grabbed [Defendant Mullins] by the back of the neck." *Id.* Raniszewski indicated that Mr. Gilchrist ultimately had to step in and "separate" Plaintiff and Defendant Mullins. *Id.* Additionally, Mr. Gilchrist informed Defendant Gray that Plaintiff had grabbed Defendant Mullins by the neck. Gray's Depo. at 4-5. Finally, and importantly, Plaintiff's Voluntary Statement admitted that some physical contact took place between Plaintiff and Defendant Mullins. While Plaintiff contends he was worried that Defendant Mullins was going to strike either Plaintiff or Mr. Gilchrist, he admits that he grabbed Defendant Mullins and applied "pressure point maneuvers" multiple times. Plaintiff's Voluntary Statement at 1-2. In light of all these facts, the court concludes that Defendant Gray could have reasonably believed there was probable cause to seek the simple assault and battery arrest warrant.[3]

Plaintiff appears to contend that Defendant Gray should have known that probable cause was lacking because there was some evidence that Plaintiff's touching of Defendant Mullins was justified. For example, Plaintiff indicated in his Voluntary Statement that he grabbed Defendant

---

[3] The court notes that the Arrest Warrant Affidavit, signed by Defendant Gray, indicated the following: "On the 24th day of August 2007, at Johnakin Middle School, . . . Mike Richardson did assault a male juvenile by grabbing him by the arm and neck." [Docket Entry 18-2]. The facts that Defendant Gray set forth in the arrest warrant charging simple assault and battery appear to be consistent with the majority of the reports and statements obtained by Defendant Gray prior to seeking the warrant.

12

Mullins because he was concerned Defendant Mullins was going to attempt to strike either Plaintiff or Mr. Gilchrist. Plf's. Voluntary Statement at 1-2. However, "reasonable law officers need not 'resolve every doubt about a suspect's guilt before probable cause is established.'" *Gomez*, 296 F.3d at 262 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991)). Moreover, "[w]hile officers 'may not disregard readily available exculpatory evidence . . . the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause.'" *Gomez*, 296 F.3d at 262 (quoting *Wadkins*, 214 F.3d at 541). Here, as discussed above, the statements obtained appeared to objectively corroborate to a reasonable a degree the allegations contained in the Incident Report, and therefore Defendant Gray's actions were not unreasonable. Additionally, at the hearing, Plaintiff argued that Defendant Gray failed to consider all the evidence–specifically, any exculpatory evidence–because Defendant Gray and Plaintiff had a personal history and Defendant Gray allegedly disliked Plaintiff. However, "the qualified immunity analysis focus[es] on whether the officer acted in an *objectively* reasonable manner *in this particular case*, without regard to the officer's actual subjective intent or malice and without regard to possibly inappropriate actions the officer took on other occasions." *Altman v. City of High Point*, 330 F.3d 194, 213 (4th Cir. 2003); *see also Park*, 250 F.3d at 853 ("The court does not look to the subjective intent of the officer in granting qualified immunity.") The qualified immunity defense "may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to that defense." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). Accordingly, any evidence of Defendant Gray's alleged personal history with or dislike of Plaintiff should not be considered in this objective analysis. Therefore, Plaintiff's arguments are insufficient to overcome the finding that Defendant Gray could have reasonably believed there was

probable cause to seek the arrest warrant.

Finally, the court notes that it is important that the City Judge agreed with Defendant Gray's assessment of probable cause. Given this court's conclusion that Defendant Gray was reasonable in seeking the arrest warrant, the fact that the City Judge issued the warrant "bolsters the reasonableness" of Defendant Gray's actions. *Wadkins*, 214 F.3d at 543. The Fourth Circuit has stated:

> When a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983. Otherwise, the threat of liability would force officers to continuously second-guess the considered decisions of magistrates. This in turn would promote delay in the execution of warrants, and alter the proper allocation of law enforcement functions.

*Torchinsky*, 942 F.2d at 262.

In sum, based on the totality of the circumstances, the court finds that Defendant Gray acted with objective reasonableness in seeking the arrest warrant and therefore should be entitled to qualified immunity on the federal § 1983 claim.

III.  Remaining State Law Claims

Plaintiff originally filed this matter in the Court of Common Pleas for Marion County, South Carolina. Plaintiff's Complaint stated both a federal cause of action and state causes of action arising out of the incident that occurred between Plaintiff and Defendant Mullins, and Plaintiff's ultimate arrest. Defendants, relying on the federal § 1983 claim, removed the case to this court on the basis of 28 U.S.C. § 1441 which provides for removal of civil actions "of which the district courts of the United States have original jurisdiction." After determining that Defendant Gray is

entitled to qualified immunity on the federal § 1983 claim,[4] only state law claims remain. Those state law claims are for malicious prosecution, slander, and abuse of process.

"[F]ederal courts [] have [the] *inherent* power to remand removed State claims when the federal claims drop out of the case." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 616 (4th Cir. 2001). Additionally, 28 U.S.C. § 1367(c)(3) authorizes a district court in its discretion to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." District courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In deciding whether to decline to exercise supplemental jurisdiction and remand a case, the court should consider "principles of economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988).

The court declines to exercise supplemental jurisdiction over the remaining state law claims. The court notes that the sole federal claim–the basis for this court's original jurisdiction–will be dismissed from this action by way of this Order. This will leave remaining only South Carolina State law claims. Accordingly, the court finds that this case should be remanded to the state court in which it was originally filed.

## Conclusion

Based on the foregoing, and by consent, it is therefore **ORDERED** that Defendant City of Marion Police Department and Defendant Chief Willie Smith are **DISMISSED** as parties to this action.

---

[4] The court once again notes that, at the hearing, Plaintiff's counsel indicated that Plaintiff's federal § 1983 claim was asserted against only Defendant Gray, and not against the other defendants.

**IT IS FURTHER ORDERED** that Defendant Gray is entitled to qualified immunity on the federal § 1983 claim. Accordingly, summary judgment is **GRANTED** as to the federal § 1983 claim and that claim is hereby **DISMISSED** *with prejudice*.

**IT IS FURTHER ORDERED** that the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, which are against the City of Marion, and individuals Mullins, Garner, and Brown.[5] This case is hereby **REMANDED** to the South Carolina Court of Common Pleas for Marion County. A certified copy of this Order of Remand shall be mailed by the Clerk of this court to the Clerk of Court for the Court of Common Pleas, Marion County, South Carolina.

**IT IS SO ORDERED.**

                                              s/R. Bryan Harwell
                                              R. Bryan Harwell
                                              United States District Court

Florence, South Carolina
November 18, 2010

---

[5] Plaintiff should once again be entitled to file a request for entry of default in state court and an additional motion for default judgment, which has not been entered in federal court, as to these individuals.